# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **WESLEY BROOKS** | : | **CASE NO.** _____ |
| C/O ERIC HOLLOWAY LAW GROUP, LLC | : | |
| 5650 BLAZER PARKWAY, SUITE 100 | : | |
| DUBLIN, OHIO 43017 | : | **DISTRICT JUDGE** _____ |
| **PLAINTIFF,** | : | **MAGISTRATE JUDGE** _____ |
| v. | : | |
| **WIDEOPENWEST FINANCE, LLC** | : | |
| d/b/a WOW! Internet, Cable and Phone | : | |
| d/b/a WideOpenWest, Inc. d/b/a/ | : | |
| Wow! Internet, Cable & Phone | : | |
| d/b/a WideOpenWest Ohio LLC | : | |
| C/O CORPORATION SERVICE COMPANY | : | |
| 50 WEST BROAD STREET, SUITE 1330 | : | |
| COLUMBUS, OH 43215, | : | |
| **DEFENDANT.** | : | |

**COMPLAINT FOR MONEY DAMAGES, DECLARATORY RELIEF AND INJUNCTIVE RELIEF WITH JURY DEMAND ENDORSED HEREON**

Plaintiff Wesley Brooks presents this Complaint for Money Damages, Declaratory Judgment, and Injunctive Relief due to Defendants' unlawful conduct under at least the Americans with Disabilities Act, Family and Medical Leave Act, Title VII, and state law claims. He alleges:

### I.    Introduction and Preliminary Statement

1. Plaintiff Wesley Brooks endured racial and sexual discrimination while working for Defendant WIDEPOENWEST FINANCE, LLC d/b/ WideOpenWest, Inc., d/b/a/ Wow! Internet, Cable & Phone, d/b/a WideOpenWest Ohio, LLC (hereinafter Wow!). He faced retaliatory conduct by Defendant when he reported his concerns about such discriminatory conduct. He is male and Black.

2. Defendant Wow! and its management team treated Mr. Brooks differently than it treated females and those who are not Black. They asked him to complete tasks that other persons in his position were not asked to complete. They did not pay him commissions that they would ensure others would receive. They disregarded his complaints about conditions in the workplace, creating a racially uncomfortable if not hostile work environment.

3. Defendant started to violate Mr. Brooks' rights under federal law, Title VII, 42 USC §§ 2000e *et seq*. Defendants violated his rights under Ohio's R.C. Chapter 4112, too.

4. Defendants fired Mr. Brooks on October 10, 2019, falsely claiming that he did not perform his duties and did not get along well with others at work.

## II.  Overview of Claims, Jurisdiction, Venue and Parties; Right to Sue

5. Mr. Brooks reincorporates by reference as if fully rewritten all prior paragraphs of this Complaint.

6. This matter arises due to Defendants' illegal conduct under federal law. Defendants violated at least Title VII, 42 USC §§ 2000e *et seq*.

7. This matter also arises due to Defendants' illegal conduct under Ohio state law. Defendants violated Ohio R.C. Chapter 4112.

8. This matter also seeks relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

9. Pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), this Court has jurisdiction over the federal claims asserted in this Complaint.

10. Pursuant to 28 U.S.C. §§ 1367(a), this Court has jurisdiction over the state law claims asserted in this Complaint.

11. All operative facts giving rise to this Complaint occurred within Franklin County, City of Columbus, Ohio. Venue is proper in this Division.

12. Mr. Wesley Brooks, a citizen of the United States of America, has resided in Franklin County, Ohio since 2006. He is Black and male.

13. Defendant Wow! operates throughout the country. It started in 1996 and has its headquarters in Englewood, Colorado. It operates, "across 19 markets via our advanced hybrid fiber-coax network. Our footprint covers certain suburban areas within the states of Alabama, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, Ohio, South Carolina and Tennessee. (Source: WideOpenWest, Inc. and Subsidiaries, Form 10-K for the Fiscal Year Ended December 31, 2020, p. 3, found at the following site as viewed April 22, 2021: https://secfilings.nasdaq.com/filingFrameset.asp?FilingID=14740690&RcvdDate=2/24/2021&CoName=WIDEOPENWEST,%20INC.&FormType=10-K&View=html, hereinafter "Wow 10-K.")  It serves over 850,000 customers. (Id. at p.3.) It employs over 2,000 nationwide. (Source: Wow! 10-K, p. 9.) For the fiscal year ending 2020, it reported sales of $1.148 billion. (Source: Wow! 10-K, App. F-17.) It reported its net income as $14.4 million. (Id. at App. F-34.)

14. Mr. Brooks reported to Gina Gasperini at Wow. Ms. Gasperini worked as a Manager of Account Management during much if not all times relevant to this action. She is White.

15. At all times relevant, Mr. Brooks and each Defendant has worked in or has been in Franklin County, Ohio.

16. Each Defendant is an "individual" and/or "employer" as defined in Chapter 4112 of the Ohio Revised Code.

17. Mr. Brooks is a "person" and an "employee" as defined in Title VII, 42 USC §§ 2000e(a), (b) and (f) and Chapter 4112 of the Ohio Revised Code.

18. Each Defendant is an "individual" and/or "employer" as Title VII, 42 USC 2000e and Chapter 4112 of the Ohio Revised Code.

19. On April 7, 2020, Mr. Brooks filed a charge of discrimination. He filed it with the Ohio Civil Rights Commission (COL 71(47769)04072020; 22A-2020-01730C). (Ex. A, OCRC Right to Sue Letter, p. 1.)

20. On February 11, 2021, OCRC issued a right to sue letter. (Ex. A, OCRC Charge & Right to Sue Letter, p. 2.) Mr. Brooks filed this lawsuit within 90 days of receiving that letter.

### III. Facts

#### A. Overview of Work History and Job Positions

21. Mr. Brooks incorporates by reference as if fully rewritten all previous paragraphs of this Complaint.

22. On July 17, 2017, Mr. Brooks started to work for Wow! as a Business Accounts Manager. He went as a liaison between Wow! and a customer for issues related to service, billing, or upgrading services for a customer.

23. During his time at Wow!, Mr. Brooks reported to Gina Gasperini. Under her management, Mr. Brooks experienced race and sex discrimination.

24. On October 10, 2019, Wow! unlawfully fired Wesley Brooks. Mr. Brooks posits that Wow! fired him due to his race/color, sex, and then retaliated against him when he began to report his

concerns of discrimination at work. Mr. Brooks is Black and male. He describes applicable comparators below.

### B. Defendants' Racial Discrimination Aimed at Mr. Brooks

#### 1. Mr. Brooks encountered a culture of racial discrimination at Wow!

25. Mr. Brooks encountered racist behaviors soon after starting his position at Wow!. He heard a coworker, Matthew Darnell (White, male, 50s) speak poorly about immigrants. Mr. Darnell would predict a second civil war, reported having his .45-cal handgun ready.

26. Another coworker was Keith Darling (White, male, late 50's). Mr. Darling was no better and arguably was worse. He often referred to areas of Columbus, Ohio in which many inhabitants are predominately Black as "the ghetto."

27. Yet another coworker, Joseph Jones (White, male, mid-40's), showed pornographic images to others in the office.

28. Still another, Kevin Bowen (White, make, mid-60s), explained that he could not be racist because he has mixed race grandchildren. Mr. Bowen then often would try to show to Mr. Brooks pictures of his grandchildren.

29. In either March or April of 2019, two technicians were talking about tacos. One asked if they had "aye, aye" sauce. It was said in a Spanish accent in a disparaging manner.

30. In another instance in April 2018, Technician Thomas Stace recounted an interaction with a Black woman; the two had a disagreement. He mocked her, and as he told his story, he said the woman was acting "ghetto as hell."

31. Often, Mr. Brooks raised his concerns with his direct supervisor, Gina Gasperini (White, female, late 40s). In each instance, Ms. Gasperini would direct Mr. Brooks to let it go. Drop by drop, the foregoing events painted a backdrop that depicted a racially callous work environment. The discrimination did not stop there.

32. Respect for one's supervisors and respect for one's subordinates should be a given in any office. Wow! rejects such a norm. Mr. Brooks has another coworker, Gary Griskivich (White, male, 50s). In early 2018, Mr. Griskivich had a verbal argument with Ms. Gasperini. He was shouting at her on the phone, and those in the office with Mr. Brooks could hear both him and Ms. Gasperini over Mr. Griskivich's speaker. In addition to shouting, a male's screaming voice could be heard from the office that day. Upon information and belief, Ms. Gasperini took no corrective action against her White subordinate for this behavior.

2. **Racial discrimination directed toward Mr. Brooks**

33. Mr. Brooks can recount many instances with his boss, Ms. Gasperini that involved racism. He believed he experienced many negative decisions on his commissions and treatment at work that he saw no White males endure.

34. For example, Mr. Brooks experienced race discrimination involving his pay. In October 2018, Mr. Brooks tried to share a contract with Aaron Lee (White, male, late 30s). Since both had worked on a contract, both then would receive credit and a proper split of the commission. This was common practice at Wow!.

35. However, Mr. Lee thought otherwise. Mr. Lee at one point in the process said he could not close the account. Mr. Brooks then got more specific, saying that Mr. Lee should put the

contract in to sign. Mr. Lee responded with, essentially, "you work for me. I don't work for you, and you don't tell me what to do."

36. Mr. Lee was a salesman at Wow!. He had no supervisory role over Mr. Brooks.

37. Mr. Brooks reported this incident to his boss, Ms. Gasperini. Instead of reprimanding Mr. Lee, she removed Mr. Brooks from all of Mr. Lee's accounts. Such a removal also diminished the commissions Mr. Brooks earned.

38. Mr. Lee's disdain for Mr. Brooks did not end in 2018. In May 2019, Mr. Brooks received a disparaging email from Mr. Lee. Mr. Lee spoke down to Mr. Brooks.

39. Mr. Lee belittled Mr. Brooks what to do on their shared accounts. As before in 2018, Mr. Lee had no rank above Mr. Brooks.

40. Mr. Brooks informed his boss, Ms. Gasperini. Ms. Gasperini said she would take care it. She did the opposite. She took care of Mr. Lee by removing Mr. Brooks from the accounts that Mr. Brooks had re-accumulated with Mr. Lee.

41. Ms. Gasperini displayed her racism towards Mr. Brooks in other ways. In November 2018, Mr. Brooks received his work evaluation. Ms. Gasperini had generated it. He thought it did not fairly and accurately represent his work efforts.

42. Mr. Brooks at first declined to sign it, but Ms. Gasperini said his signature merely acknowledge what she reported in the review. He signed. He then received no pay raise.

43. Mr. Brooks then protested within the channels via Human Resources. Two workers in Human Resources, Lindsey Jordan and Kelli Krantz refuted what Ms. Gasperini had told him. Neither offered him any recourse. Mr. Brooks lost a 3% pay raise, worth about $1,900 per year to him.

44. Mr. Brooks had yet another negative encounter with Ms. Gasperini. In October 2019, Ms. Gasperini instructed Mr. Brooks to do something outside of his job duties. She wanted him to help with a Catholic Church school that was having difficulties with their Wow! product.

45. The Church wanted a Wow! employee to train them in person. The customers already had completed web-based training twice. Mr. Brooks also previously had gone to the site and taken down their questions and passed them along to the correct department.

46. Mr. Brooks shared this situation with Ms. Gasperini. Mr. Brooks explained to her that he did not know how to use that system at the Church. Thus, he could not train other people.

47. Ms. Gasperini said to Mr. Brooks that everybody needs to know how to use that system. She told him to contact a co-worker for training. She directed him to speak with Jeff Bolinkowski. In fact, Mr. Bolinkowski handles even bigger accounts than Mr. Brooks and does not do such training himself. Instead, Mr. Bolinkowski did what Mr. Brooks had done earlier – obtain and pass along questions on to the correct department at Wow!.

48. Ms. Gasperini said she was disappointed in him. She asked, "Who are you to make this decision?" Mr. Brooks explained - again - that an entire department handles this type of task for which he has no training.

49. Mr. Brooks rather expected this type of reaction. Throughout his time under her leadership, he met both negativity and outright hostility from her. For example, Ms. Gasperini typically would answer Mr. Brooks' questions of any type with hostile questions – not answers, not directions where to obtain answers. That was especially true if he ever complained to HR about her.

50. In the spring of 2018, Mr. Brooks endured another challenge involving his boss, Ms. Gasperini, and his compensation. He had an incident with a customer for which he deferred to what Ms. Gasperini, instructed him to do. The incident involved a customer who thought he would receive a large credit.

51. Ms. Gasperini told Mr. Brooks that the customer would not get a credit. That upset the customer. The customer asked to speak to Ms. Gasperini. The customer falsely reported that Mr. Brooks was not helpful and was not doing his job.

52. Ms. Gasparini relented and gave giving him a big credit after the customer made all these complaints and lies about Mr. Brooks. Mr. Brooks pointed out that this was not the best approach and that he was only doing what she told him to do.

53. Ms. Gasperini agreed but did nothing to adjust the account so that Mr. Brooks would get the commission he should have on the sale.

54. That issue with the large credit was not the only dispute Mr. Brooks had with Ms. Gasperini. When Mr. Brooks was first hired, Ms. Gasperini said he could not get paid for certain accounts.

55. However, in the spring of 2018, Mr. Brooks learned he could get paid and confronted her about this. He received no satisfactory response. Also, she refused to allow to him to collect on accounts where he had been a vital part of getting customers signed up for Wow!.

56. Mr. Brooks endured racism at Wow! not only from Ms. Gasperini, but also from her boss, Crystal Lee.

57. At a conference in Nashville in May 2018, a group of employees were outside smoking. There was a random person – not Mr. Brooks - who was smoking marijuana. Ms. Lee smelled the

marijuana smoke and accused Mr. Brooks of smoking marijuana. Mr. Brooks was the only Black male in the group from Wow!.

58. Mr. Brooks experienced another negative work event for which he never heard happening to a White worker. In March or April 2019, Mr. Brooks received a write up to discipline him for an incident involving a reportedly upset customer.

59. The event supposedly had happened one year earlier. Mr. Brooks never received any basis from management to explain how he could receive discipline for such a stale event.

60. Repeating her interference with Mr. Brooks' income, Ms. Gasperini impeded Mr. Brooks on another sale in early October 2019. Mr. Brooks aided in closing deal with a YMCA, to include actively taking part in a two-hour meeting.

61. However, Ms. Gasperini refused to allow Mr. Brooks to continue to work on it and collect his revenue from this customer. Mr. Brooks estimates that he lost about $2,500-$3,000 in commissions due to Ms. Gasperini's actions.

62. In October 2019 again, a customer, Claremont Retirement Village, needed another line ran. The manager for the technicians told Mr. Brooks that Wow! needed to charge this customer.

63. Mr. Brooks informed the customer, but the customer complained that Mr. Brooks was not trying to help. This customer had used this same strategy in the past to get a credit from Wow!.

64. Ms. Gasperini was aware of this technique and instructed Mr. Brooks to charge the customer. A few days later, she had another representative credit the money back to the customer.

65. Ms. Gasperini even displayed racism in how she processed work-related automobile accidents. In December 2017, Mr. Brooks had a minor accident while on the job. He reported it to Ms.

Gasperini. He explained the other driver had caused the accident. Still, she ordered him to take a drug test and stay off work for three days. While Mr. Brooks returned to work, it was only after he called her to inquire about his status.

66. In contrast, White employees did not face such scrutiny at Wow!. In the winter of 2018, Kevin Brown (White, male, 60s) got into a car accident. He did not submit to a drug test. He did not lose time off. He returned to work the next day.

67. In late spring or early summer 2019, Mr. Brooks learned of another employee who had been in a car accident. Matthew Darnell (White, male, 50s) destroyed his car. Mr. Darnell had to take no drug test. Mr. Darnell took no time off from work.

68. In late September 2019, Mr. Brooks had a conversation with David Pruitt. Mr. Pruitt told Mr. Brooks about an instance in which his boss directed him to allow a White employee to return to work at once after being a car accident. Mr. Brooks does not know if that employee had to submit to a drug test.

### C. Mr. Brooks endured sex discrimination at work.

69. Mr. Brooks endured sex discrimination due to the acts and decisions of both his boss, Gina Gasperini, and her boss, Crystal Lee.

70. As noted above, Ms. Gasperini told Mr. Brooks she would not allow a customer in March or April of 2018 to receive a credit. Later, she did. Upon information and belief, Ms. Gasperini allowed Mr. Brooks' gender to dictate her decision.

71. Likewise, as reported above, Ms. Gasperini did not allow Mr. Brooks to receive compensation for certain work. She had told him when he first was hired that he would not receive compensation for such work.

72. Mr. Brooks learned in the spring of 2018, that he could have and should have received such compensation.

73. In May or June 2018, Mr. Brooks spoke with Crystal Lee. Ms. Lee supervises Ms. Gasperini. He complained about Ms. Gasperini. His complaints covered both Gina Gasperini's managerial style and the racism issues. Those issues included: not supporting Mr. Brooks, going against a decision that they had both made, making Mr. Brooks look bad to customers, not remembering what instructions she gave to Mr. Brooks, randomly changing her rules or how she would handle situations, avoiding giving him money that he earned, ignoring his complaints about the office environment and making him feel that he was treated differently because of his skin color. Ms. Lee sent Mr. Brooks to HR.

74. With HR, Mr. Brooks received little to no better treatment. There, he met with Lindsey Jordan and later Kelli Krantz. Each said they would review his concerns and get back to him. No one from HR has contacted him to this day about Ms. Gasperini.

75. Ignoring as a management technique was common at Wow!. As noted above, Mr. Brooks had a dispute involving a Church as a customer. That had occurred in October 2019. Mr. Brooks had requested a meeting with Ms. Gasperini, who never got back with him.

### D. Mr. Brooks endured retaliation for presenting his discrimination complaints.

76. Defendants failed to address Mr. Brooks' federally and state-protected rights at work. Mr. Brooks repeatedly tried to explain his concerns. Defendants ignored them.

77. In fact, Defendants acted against by retaliating against him for raising his concerns about the discrimination he had reported to management.

78. In March 2018, after his various meetings with his managers about discrimination, Ms. Lee told Mr. Brooks and other Wow! employees not to submit negative comments in an upcoming survey unless they had raised the issue first with their direct bosses.

79. This prompted Mr. Brooks' discussions with Ms. Gasperini as recounted above.

80. By early October 2019, Mr. Brooks had reported his concerns to his boss, Ms. Gasperini. He then responded to the company survey.

81. The survey concerned his thoughts about Ms. Gasperini's work performance. He answered these survey questions with honesty and detail. One of the points he made was that the instructions he received from Ms. Gasperini often conflicted with what Wow! policies were and what Ms. Lee told him. The survey was supposed to be anonymous but, in the past, he has been questioned about other surveys that were supposed to by anonymous as well. However, Wow! fired Mr. Brooks on October 10, 2019.

### E. Injuries and Damages

82. Due to Defendants' individual and/or joint wrongful acts or omissions, Mr. Brooks has experienced and/or continues to experience compensable damages. Such damages include but are not limited to as follows: pain and suffering that could require or continues to require

medical care and mental health care, suffered at least temporary if not permanent psychic injury, anguish, severe emotional distress, mental distress, financial distress, pain and suffering, and other physical, emotional and psychological injuries.

83. Due to Defendants' individual and/or joint wrongful acts or omissions, Mr. Brooks suffered and will continue to suffer economic and non-economic harm and damages. Such harm and damages include, but are not limited to, back pay, front pay, past and future economic and non-economic losses, loss of salary and fringe benefits, to include but not limited to converting his 401k savings, and other privileges and conditions of employment.

84. Defendants' discriminatory actions against Mr. Brooks were purposeful, willful, reckless and/or malicious. Their actions make each Defendant jointly and severally liable for Mr. Brooks' past and future economic and non-economic compensatory and punitive damages. Their actions also entitle Mr. Brooks to recover attorney fees and reasonable costs and expenses, pursuant to the Title VII. *Confirm*

85. Defendants' acts and omissions proximately and directly caused Mr. Brooks to endure injuries and damages. Those injuries and damages include, but not limited to, the following: loss of earnings and earning capacity; loss of career opportunities; loss of fringe benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, to include but not limited to pursuing gainful employment of his choice.

86. Defendants' discriminatory actions against Mr. Brooks were purposeful, willful, reckless and/or malicious. Their actions make each Defendant jointly and severally liable for Mr. Brooks' past

and future economic and non-economic compensatory and punitive damages. Their actions entitle Ms. Brooks to recover attorney fees, reasonable costs and expenses, pursuant to Title VII and Ohio R.C. Chapter 4112.

87. Additionally, Mr. Brooks has incurred and legal expenses.

### IV.     Claims for Relief

#### A.     First, Second, & Third Claims for Relief – Violation of Title VII (Race/Color and Gender Discrimination and Retaliation)

88. Mr. Brooks incorporates by reference all previous paragraphs of the Complaint as if fully rewritten.

89. Defendants unlawfully subjected Mr. Brooks to unlawful discrimination due to his race, color and/or sex.

90. Defendants also unlawfully retaliated against Mr. Brooks for acting to promote, advocate, and advance Title VII laws at his place of work.

91. Defendants also unlawfully caused Mr. Brooks to endure disparate treatment. They caused him to suffer adverse employment actions due to his race, color, and sex. They created a hostile work environment due to his race, color, and sex.

92. Defendants thus violated Title VII, 42 USC § 2000e-2(a)(1) and (a)(2). Namely, they impaired terms, conditions and privileges of employment; disciplined him; and discharged Mr. Brooks unlawfully due to his race, color, and sex. They also refused to compensate him or otherwise provide him with one or more terms, conditions, privileges of employment due to his race, color, and sex.

93. Mr. Brooks suffered as well under a hostile or abusive work environment.

94. Mr. Brooks endured unlawful conditions of employment from his first day to his last day of employment.

95. Mr. Brooks encountered racial discrimination within hours of starting to work at Wow!.

### B. Fourth Claim - Violations of Ohio Civil Rights, Ohio Rev. Code Chapter 4112

96. Mr. Brooks incorporates by reference all previous paragraphs of the Complaint as if fully rewritten.

97. It is unlawful under Ohio law to discriminate against anyone based on age, gender, disability and other conditions. Ohio Rev. Code Chapter 4112.

98. Under Ohio Rev. Code Chapter 4112, each Defendant's acts and omissions set forth above constitute unlawful discriminatory conduct based upon Mr. Brooks' gender.

99. Under Ohio Rev. Code Chapter 4112, each Defendant's acts and omissions set forth above constitute unlawful discriminatory conduct based upon Mr. Brooks' race or color.

100. Under Ohio Rev. Code Chapter 4112, each Defendant's acts and omissions set forth above constitute unlawful discriminatory practices prohibited specifically by and not limited to, Ohio Rev. Code § 4112.02(A) and 4112.14.

101. Defendants' acts or omissions caused Mr. Brooks to endure harm in an amount to be proven at trial.

## IV. Jury Demand

102. Mr. Brooks requests a jury trial as to all claims triable to a jury.

## V. Prayer for Relief

WHEREFORE, Plaintiff Brooks demands judgment as follows:

A. Award Plaintiff Brooks compensatory damages against Defendants in an amount to be established at trial;

B. Award Plaintiff Brooks punitive damages against Defendants as appropriate in an amount to be established at trial;

C. Award Plaintiff Brooks back pay and front pay in an amount to be established at trial;

D. Award Plaintiff Brooks severance pay which Defendants paid to other employees it fired and paid severance pay, if any;

E. Award Plaintiff Brooks reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988, Title VII, and any other applicable law;

F. Award Plaintiff Brooks prejudgment interest and post-judgment interest;

G. Grant injunctive relief to cure all violations Defendants cause and to require Defendants not to repeat such violations in the future;

H. Award Plaintiff Brooks any other and additional relief to which Plaintiff Brooks is entitled by law or equity and to which Court deems proper;

Respectfully submitted,

**Eric Holloway Law Group, LLC**

s/ *J. Eric Holloway*
_____
J. Eric Holloway (0063857)
5650 Blazer Parkway, Suite 100
Dublin, OH 43017
614-526-8552 (D); 614-522-6789 (Fax)

17

*Brooks v. Wow! Internet, Cable & Phone*

                                              Eric@EricHollowayLaw.com;
                                              www.EricHollowayLaw.com
                                              Trial Counsel for Plaintiff Wesley Brooks

Note: Plaintiff sent applicable request(s) for waiver of service and summons to each Defendant, sending requests to Defendant Wow!!, using the address(es) indicated in the Complaint, namely its statutory agent Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, OH 43215.